*628 OPINION OF THE COURT
Bruce M. Kaplan, J.
In the latest episode of a long-running saga, but the first of many similar supplemental petitions which generated an objection, M. S. (respondent) objects to the October 4, 1993 dismissal of his supplemental petition of August 30, 1993.[1] The petition sought authorization to make direct payments to B. S. (petitioner) a former recipient of Aid to Families with Dependant Children (AFDC), under a July 14, 1983 Uniform Support of Dependants Law (Domestic Relations Law art 3-A) (USDL) support order instead of through the Support Collection Unit (SCU).
The Hearing Examiner dismissed the petition after lengthy colloquy. The Hearing Examiner concluded that Domestic Relations Law § 37 (12) mandated payments through the SCU, and that absent petitioner’s consent, the court could not order direct payments to a petitioner in a USDL proceeding.
The objection is granted and direct payments to petitioner are ordered since the Hearing Examiner misconstrued the applicable law.
This objection provides an opportunity to examine how the requirements for payment through the SCU have been changed by recent amendments to statutes, and Department of Social Services (DSS) regulations supplementing them.
These changes, which were enacted to bring New York’s statutory scheme into line with the Federal mandates contained in 45 CFR 303.2 and 302.33, are found in Laws of 1990 (ch 818) which amended Family Court Act §§ 423 and 440 and Social Services Law § 111-g in a most significant manner.
Under Family Court Act § 423, a petition for child support for persons not in receipt of aid to dependent children must contain a request for child support enforcement services conforming to the requirements of Social Services Law § 111-g.
In turn, Social Services Law § 111-g requires that persons not receiving aid to dependant children must make application to the State Department of Social Services in order to receive such services. This application is required to be made on forms prescribed by the Department, or by filing a petition, which includes a statement signed by the person requesting *629 services clearly indicating that such person is applying for child support enforcement services.
The amendment to Family Court Act § 423 eviscerated its prior requirement that support petitions contain a statement that where an order directs payment to SCU the petition shall be deemed an application for support payment services.
Family Court Act § 440 was amended to require that support orders made in Domestic Relations Law article 3-A proceedings shall direct that payments be made to the SCU when they are collected on behalf of persons in receipt of public assistance or services, or pursuant to Social Services Law § 111-g. It also provided that the order not direct payments to SCU unless one of these conditions were met.
An explanation of how these various changes came to be is found in the memorandum submitted by the State Department of Social Services in connection with this bill whose purpose was to conform State law to Federal law dealing, inter alia, with the collection of child support. (See, 1990 McKinney’s Session Laws of NY, at 2504.)
The memorandum noted that Federal law required that DSS only provide child support services to child support clients. In order to comply with Federal law the Legislature had amended Family Court Act § 423 by Laws of 1981 (ch 622) so that orders of support made payable to the SCU are deemed applications for child support enforcement services even though no application, or provision of services, had been provided to the non-AFDC custodial parent. The law was effective July 21, 1981 but made retroactive to August 1, 1976, a strong indication of the length of time that New York had been out of compliance with this requirement.
This legal fiction became untenable when Federal regulations further revised the definition of an application for child support enforcement services to require actual signed applications and to preclude the State from deeming orders of support made payable to the SCU as applications for such services.
In order to conform with this legislation, the State Commissioner of the Department of Social Services amended its own regulations (18 NYCRR 346.2) to require that a signed application on forms prescribed by the Department would be required for services for non-AFDC petitions filed subsequent to September 30, 1990.
The Hearing Examiner mistakenly concluded that respon *630 dent’s right to make direct payments to Ms. S. instead of to the SCU was exclusively governed by Domestic Relations Law § 37 (12).
The provisions of Domestic Relations Law § 37 (12) merely grant the power to direct payment to SCU.
Contrary to the Hearing Examiner’s conclusion that formed the basis for the dismissal, Domestic Relations Law § 37 (12) does not mandate payment through SCU absent petitioner’s consent to direct payment but rather grants the court the "power to direct the respondent to make the payments * * * to the support collection unit.” In order for the Hearing Examiner’s conclusion to be meritorious, that section would read "shall direct the respondent”.
The circumstances under which this power shall or shall not be exercised are delineated in Family Court Act § 440, which in turn must be harmonized with the provisions of 45 CFR 302.33 (a) (2).
The 1990 amendment to Family Court Act § 440 (1) (a) directed payment to SCU, and removed the right to receive direct payment or request payment to SCU where the recipient was in receipt of AFDC, or was receiving child support services,[2] and specifically forbade payments to SCU if a person were not receiving child support services.
45 CFR 302.33 (a) (2) requires that once a person requests that services be discontinued, it is necessary to file a new application for service in accordance with the initiating State’s requirements in order for payments to be made to SCU.
There can be no doubt that Ms. S. had declined child support enforcement services by the time the August 30, 1993 petition was brought. The file contains her March 5, 1993 notarized letter specifically requesting discontinuance of the services of the child support enforcement division. That vitiated the authorization for payment to SCU.
There are equitable, as well as legal grounds to grant the petition. Mr. S.’s insistence that he be permitted to make direct payments to Ms. S. is supported by a valid factual matrix. The numerous documents he submitted both in connection with his modification petition of August 30, 1993, and again with his objection underscore that for well over five *631 years there were numerous and systematic mishandling of this matter by SCU.
A July 28, 1988 letter from SCU surfaced that while Mr. S. was current in his payments to SCU, SCU had inexplicably delayed in forwarding these payments to Dane County to the detriment of Ms. S. This was not the only instance where SCU acknowledged its errors. A perusal of 1992 and 1993 correspondence reveals that the same problems of delayed transmittal of Mr. S.’s payments by SCU were ongoing in nature.
In fact, there is an unprecedented series of letters by and to the parties involving the parties, SCU and the Dane County Child Support Agency, the Wisconsin State Department of Health and Social Service’s Division of Economic Support and letters from the offices of Senator Daniel P. Moynihan and Senator Herb Kohl, United States Senators from New York and Wisconsin, respectively. This resulted in a letter from SCU to Mr. S. indicating that his case was closed as of March 1993 at the request of him and Ms. S., and that payments due after February 1993 were to be sent directly to her.
Pursuant to Family Court Act § 439 (e) (ii) it is ordered that payments be made directly to petitioner effective April 1, 1994 since Family Court Act § 440 prohibits payments through SCU.

. A rebuttal was filed by the Corporation Counsel which, sub silentio, abandoned what may have been an objection to in personam jurisdiction on October 4, 1993.

. There rights had been granted by Laws of 1985 (ch 809) which also provided for payment of Domestic Relations Law article 3-A orders to be paid to SCU.